UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JIMMY JEFFERS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:25-CV-171-CEA-JEM |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 09-01.

Now before the Court is Plaintiff's Brief [Doc. 13]. Jimmy Jeffers ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the undersigned **RECOMMENDS** the District Judge **DENY** Plaintiff's request to remand [**Doc. 13**] and **AFFIRM** the Commissioner.

## I. PROCEDURAL HISTORY

On May 13, 2021, Plaintiff filed for Social Security Insurance disability benefits under Title II of the Social Security Act [Tr. 198–200]. Plaintiff claimed a period of disability that began on August 11, 2020 [*Id.* at 198]. After his claim was denied initially [*id.* at 53–61] and upon reconsideration [*id.* at 63–74], Plaintiff requested a hearing before an ALJ [*id.* at 98]. A hearing was held on January 23, 2024, before ALJ Joyce Francis (hereinafter "ALJ Francis" or "the ALJ") [*Id.* at 34–52]. On March 14, 2024, the ALJ found Plaintiff not disabled [*Id.* at 12–33]. Plaintiff asked the Appeals Council to review the ALJ's decision [*Id.* at 7–11]. The

Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 23, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 13, 15, and 16].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since August 11, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: obesity; status/post lumbar fusion; chronic pain syndrome; anxiety; and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and

404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds; can occasionally balance as defined by the Selected Characteristics of Occupations in the Dictionary of Occupational Titles. He can occasionally stoop, kneel, crouch, and crawl and can frequently be exposed to unprotected heights or dangerous moving machinery. He can understand and remember simple instructions; can sustain attention and concentration to complete simple tasks with regular breaks every 2 hours during an 8-hour workday; and can adapt to routine work conditions and occasional workplace changes that are gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 28, 1985, and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2020, through the date of this decision (20 CFR 404.1520(g)

[Tr. 17–28].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's

findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff claims the ALJ committed two errors [Doc. 13]. First, he argues that the ALJ committed reversible error when she found Dr. Uzzle's opinion mostly persuasive but failed to account for Dr. Uzzle's standing and walking limitations in the RFC [*Id.* at 10–16]. Second, Plaintiff contends that the ALJ erred by failing to explain how his obesity impacts his functional limitations [*Id.* at 16–21].

For the reasons below, the undersigned finds the ALJ did not commit reversible error.

### A. Dr. Uzzle's Opinions

Plaintiff argues that although the ALJ found Dr. Uzzle's opinion mostly persuasive, she did not adopt his walking and standing limitations [Doc. 13 pp. 11–12]. According to Plaintiff, "This resulting RFC assessment creates an internal inconsistency in the ALJ's decision that she makes no effort to resolve" [*Id.* at 12 (citation omitted)]. He submits, "The ALJ's RFC assessment permits [him] to 'perform light work' without any sit/stand option or limitations on the duration for standing or walking at one time" [*Id.*]. "This assessment[,]" Plaintiff asserts, "directly contradicts Dr. Uzzle's persuasive opinion that [he] can stand for only one hour at a time, sit for only 1–2 hour(s) at one time, and walk for only 30 minutes at a time" [*Id.*]. He submits that "Dr. Uzzle's finding that [he] can stand for only up to one hour and sit for only 1–2 hours at a time implies a sit/stand option would be necessary, yet the RFC contains no such accommodation" [*Id.* at 13]. Plaintiff argues, "This creates an evidentiary gap between the persuasive medical opinion and the ALJ's RFC assessment" [*Id.*]. "Moreover," Plaintiff asserts, "the ALJ failed to reconcile inconsistencies between persuasive medical opinions" [*Id.*].

Defendant responds that the ALJ discussed the supportability and consistency of Dr. Uzzle's opinion [Doc. 15 p. 3]. He asserts that the ALJ "is not required to wholly adopt even a persuasive opinion" [*Id.* (citation omitted)]. Further, Defendant submits that "the regulations provide for source-level articulation, meaning the ALJ considers a source's opinions/findings together in a single analysis" [*Id.* (citation omitted)]. "By extension," he submits, "the ALJ need not discuss supportability and consistency for each opined limitation so long as she complied with the regulations and explained her reasons for finding a source's opinions/findings not fully persuasive" [*Id.* (citation omitted)]. Defendant contends that under the current regulations, "the ALJ is never required to adopt any opinion" [*Id.*]. Further, he claims that "there is no requirement

that the explanation contemplated by [Social Security Ruling] 96-8p be contained in the ALJ's evaluation of the supportability and consistency factors" [*Id.*]. Defendant argues, "The ALJ . . . assessed an RFC similar to Dr. Uzzle's opinion, including similar limitations in Plaintiff's ability to lift, carry, sit, stand, and walk in an eight-hour workday" [*Id.* (citation omitted)]. "Notably," he submits, "the ALJ assessed greater limitations in Plaintiff's ability to perform postural activities (such as climbing, balancing, stooping, kneeling, crouching, and crawling)—from frequent in Dr. Uzzle's opinion to occasional in the RFC" [*Id.* (emphasis and citation omitted)]. Defendant further states the ALJ "gave multiple reasons why Plaintiff's disabling physical complaints were inconsistent with the record and why that record supported the assessed RFC—including limitations in sitting, standing, and walking commensurate with light work" [*Id.* at 4–5 (citation omitted)]. According to Defendant, "That discussion is sufficient to explain to Plaintiff why the ALJ did not include additional limitations" [*Id.* at 5 (citation omitted)]. "Importantly," Defendant asserts, "the ALJ's assessment of a nondisabling physical RFC was further supported by her evaluation of the prior administrative medical findings of state agency medical consultants Thomas Thrush, M.D., and Ok Yung Chung, M.D." [*Id.* (citation omitted)].

Plaintiff replies that Defendant "fundamentally mischaracterizes the issue" [Doc. 16 p. 1]. He argues, "This is not about whether the ALJ must adopt every limitation from a persuasive opinion—it is about the ALJ's failure to explain why she rejected specific limitations from an opinion she explicitly found 'mostly persuasive'" [*Id.*]. "[The ALJ's] silence on the durational limitations . . . while embracing other aspects of the opinion creates the precise logical gap that requires remand" [*Id.* at 2]. Although "the 'controlling weight' standard [in SSR 96-8p] has changed," Plaintiff states that the "ALJs must build a logical bridge between evidence and conclusions" [*Id.*]. With respect to Defendant's argument that the ALJ assessed greater postural

limitations, Plaintiff claims this is a red herring [*Id.* at 3]. Further, Plaintiff asserts that "[t]he ALJ never acknowledged or reconciled" Dr. Uzzle's opinions with the state agency medical consultants' opinions [*Id.* at 3–4].

On October 5, 2022, Dr. Uzzle examined Plaintiff [Tr. 805–07]. Dr. Uzzle noted that Plaintiff "finished physical therapy" and was "[n]ot very consistent about doing his home exercise program therapy and is mostly sedentary" [*Id.* at 805]. Upon a physical examination, Dr. Uzzle stated, "There is symptom magnification influencing his presentation in my clinical opinion" [*Id.* at 806]. He found three out of five Waddell signs were positive and noted that Plaintiff gave "limited effort" [*Id.*]. Plaintiff had a normal station and gait and that "[t]oe walking, heel walking, and deep knee bend [were] all done commensurate with effort given" [*Id.*]. Plaintiff declined to attempt to tandem walk, and he did not have a handheld assistive device [*Id.*]. In an 8-hour day, Dr. Uzzle opined Plaintiff could stand up for 6 hours (up to 1 hour at a time) and walk for up to five hours (up to 30 minutes at a time) [*Id.* at 811]. He further opined that Plaintiff was not able to walk a block at a reasonable pace on rough or even surfaces [*Id.* at 815].

The ALJ summarized Dr. Uzzle's physical examination and findings, including his limitations about standing and walking [Tr. 23, 25]. She found Dr. Uzzle's opinion "mostly persuasive[,]" noting that it "has support in the medical signs and findings at the examination by Dr. Uzzle" [*Id.* at 25]. The ALJ stated that his opinion "is consistent with the lack of ongoing treatment during most of 2023" [*Id.*]. "Moreover," the ALJ asserted, "it is consistent with the other evidence, such as the poor effort and symptom magnification as well as the wide range of activities of daily living" [*Id.* at 25–26]. She found the "[t]he limitation regarding [the] inability to walk a block at a reasonable pace on rough or uneven surfaces [was] unpersuasive because [it did] not

have support in the overall medical evidence, and it [was] not consistent with the record as a whole" [*Id.* at 26].

In determining the appropriate RFC, the ALJ will consider "the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). When determining the persuasiveness of medical opinions and prior administrative medical findings, the most important factors the ALJ will consider are supportability and consistency. 20 C.F.R. § 404.1520c(a). In her discretion, she may consider other factors. 20 C.F.R. § 404.1520c(b)(3). The ALJ must explain how she considered supportability and consistency. 20 C.F.R. § 404.1520(c)(b).

The ALJ found that Dr. Uzzle's opinion was supported by the "medical signs and findings at the examination," noting Dr. Uzzle's opinion that Plaintiff gave "poor effort" and engaged in "symptom magnification" [Tr. 25–26]. The ALJ discussed that Dr. Uzzle's findings was "consistent with the lack of ongoing treatment during most of 2023" and Plaintiff's "wide range of activities of daily living" [*Id.*]. Plaintiff argues that the ALJ failed to explain why she did not adopt Dr. Uzzle's walking and standing limitations, despite finding his opinion was mostly persuasive. "[But t]here has . . . never been a requirement that an ALJ explain in detail why each specific limitation offered by every source was rejected." *Oliver v. Kijakazi*, No. 3:22-CV-28, 2023 WL 2587487, at *7 (E.D. Tenn. Mar. 21, 2023) (quoting *Jessica W. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2356, 2023 WL 2500307, at *9 (S.D. Ohio Mar. 14, 2023)); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) ("[T]here is no requirement to cite to every piece of evidence or conclusion[.]" (citing 20 C.F.R. § 404.1520c(a))); *John G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2105, 2022 WL 17413209, at *3–*5 (S.D. Ohio Dec. 5, 2022) (rejecting the plaintiff's argument that "the ALJ failed to adequately explain why she was omitting a specific limitation opined by the Agency's own

experts," because the ALJ found the opinions only "somewhat persuasive" and otherwise properly considered the consistency and supportability factors). "[While] it is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding[,]" *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013) (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)), the ALJ here merely weighed the medical evidence and found the DDS opinions persuasive.[1]

But Plaintiff contends that "[u]nder 20 C.F.R. [§] 404.1520c(b)(3), when equally persuasive opinions conflict, the ALJ must explain the resolution" [Doc. 16 p. 4]. This regulation relates to "[e]qually persuasive medical opinions . . . about the same issue." 20 C.F.R. § 404.1520c(b)(3). And here, the ALJ explicitly noted that "[t]he opinions from the state agency, DDS physicians are persuasive insofar as they support a range of light work" [Tr. 26]. The ALJ

---

1 Plaintiff argues that "the law holds that the ALJ's RFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's RFC" [Doc. 13 pp. 10–11 (citations omitted)]. But the ALJ found Dr. Uzzle's opinion mostly persuasive. Given that, the undersigned finds the cases Plaintiff relies on are distinguishable. *See Queen v. Comm'r of Soc. Sec.*, No. 2:16-CV-1082, 2017 WL 6523296, at *9 (S.D. Ohio Dec. 21, 2017) (noting that the ALJ "appeared to adopt [the doctor's] opinion in total[,]" but the RFC was inconsistent with the doctor's opinion); *Moore v. Colvin*, No. 2:14-CV-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) ("[T]he ALJ's decision fails to reference explicitly these three State agency consultants, although this Court assumes that in granting 'significant weight' to all State agency consultants, the ALJ granted significant weight to their opinions as well. Thus, this Court is left with an inability to discern whether the ALJ discounted portions of these three State agency consultants' opinions for valid or invalid reasons, or simply ignored them altogether." (citation omitted)); *Bookout v. Comm'r of Soc. Sec.*, No. 3:13-CV-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014) ("While the ALJ adopted Dr. Fletcher's opinion in its entirety, she ignored the [p]laintiff's limitation of needing to sit down for 10 minutes after continuously standing for 50 minutes."); *Commodore v. Astrue*, No. CIV.A. 10-295, 2011 WL 4856162, at *3 (E.D. Ky. Oct. 13, 2011) (remanding the case where the ALJ stated that his assessment was supported by the DDS medical consultants and that the RFC was supported by the doctor's assessment, but the medical consultants' and the doctor's opinions were different than the RFC).

explained that the state agency opinions have "support in the medical evidence" and are "consistent with the other evidence, such as the symptom magnification and the wide range of activities of daily living" [*Id.*]. Indeed, the ALJ explained that in 2021, Plaintiff reported that he drove "short distances, prepare[d] simple meals, wipe[d] the counters, and help[ed] fold laundry" [*Id.* at 24]. The ALJ also noted Plaintiff could perform similar activities of daily living in 2022 [*Id.*]. The ALJ further detailed Plaintiff's medical records and exam findings [Tr. 19–27], including Dr. Uzzle's examination wherein he noted that Plaintiff engaged in symptom magnification, gave limited effort, had normal station and gait, negative sitting straight leg raise bilaterally, and positive supine straight leg bilaterally with inconsistency with sitting [Tr. 23]. *See Nicholas E. v. Bisignano*, No. 4:25-CV-00002, 2025 WL 2054367, at *5 (W.D. Ky. July 22, 2025) ("The rest of the ALJ's opinion explains why she determined that Plaintiff can perform light work—Plaintiff does not challenge the rest of the ALJ's RFC analysis—so Plaintiff can understand the ALJ's dismissal of the doctors' opinions.").

The ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021). The undersigned finds she did so here.

**B. Plaintiff's Obesity**

Plaintiff argues that the ALJ failed to explain how his obesity impacts his functional limitations [Doc. 13 pp. 16–21]. He contends, "The ALJ's conclusory statement that [s]he considered obesity's impact falls far short of the meaningful analysis required by applicable regulations and case law" [*Id.* at 17]. "The ALJ failed[,]" Plaintiff asserts, "to discuss how obesity exacerbates his severe status/post lumbar fusion and back pain despite medical authorities recognizing that obesity significantly compounds spinal conditions and places additional stress on

weight-bearing joints" [*Id.* at 18 (footnote omitted)]. According to Plaintiff, "The record establishes that [he] suffers from both severe spinal impairments and obesity" and that the "[m]edical literature and Social Security guidance recognize that obesity can significantly exacerbate musculoskeletal impairments, particularly spinal conditions" [*Id.*]. He argues "[t]he ALJ's failure to explain how [his] obesity impacts his already severe spinal condition represents a failure to meaningfully consider the combined effects of these impairments as required by applicable regulations" [*Id.*]. "This error[,]" Plaintiff submits, "cannot be considered harmless given the severity of [his] underlying condition throughout the relevant period and the well-established medical understanding that obesity exacerbates such conditions" [*Id.* at 19].

Defendant responds that the ALJ properly applied the regulations "by finding obesity a severe impairment at step two of the sequential evaluation process and then properly basing her RFC analysis on a consideration of all medically-determinable impairments, both severe and not severe" [Doc. 15 p. 7]. "Instead of explaining how his obesity caused any specific limitations beyond those included in the RFC," Defendant states, "Plaintiff references his treatment for spinal impairments and the possible effects of obesity in general" [*Id.* (citations and emphasis omitted)]. He contends that Plaintiff has not shown the ALJ erred [*Id*. at 8].

Plaintiff replies that "[t]he ALJ never explained how obesity impacts [his] specific functional abilities or compounds his severe spinal impairments" [Doc. 16 p. 4]. He contends that the ALJ used boilerplate language [*Id.*].

As Plaintiff notes, "[SSR] 19-2p provides guidance on how the Social Security Administration establishes whether a person has a medically determinable impairment of obesity

and how obesity is evaluated in social security disability claims" [Doc. 13 p. 17].[2] The ALJ must consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, 2019 WL 2374244, at *5 (footnote omitted). "As with any other impairment," the ALJ must "explain how [she] reached [her] conclusion on whether obesity causes any limitations." *Id.*

The ALJ found that Plaintiff's obesity was a severe impairment [Tr. 18] and noted that she considered SSR 19-2p [*Id.* at 23]. Specifically, the ALJ stated, "In accordance with SSR 19-2p, [she] has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the working environment" [*Id.*]. The ALJ then explained that Plaintiff did not use any assistive or orthotic device; he showed symptom magnification and gave limited effort at his consultative examination; he showed normal station and gate; and that "[t]oe-walking, heel-walking, and deep knee bend [were] all done commensurate with effort given" [*Id.*]. The ALJ further noted that Plaintiff had "[n]egative sitting straight leg raise bilaterally[,]" "[p]ositive supine straight legal raising bilaterally with inconsistency with sitting[,]" and that he "refused to attempt range of motion testing with dorsolumbar spine" [*Id.*]. Finally, the ALJ noted that he displayed "normal range of motion in hips, knees, cervical spine, shoulders and other areas" [*Id.*]. The ALJ therefore considered Plaintiff's obesity and evaluated the underlying evidence consistent with SSR 19-2p. *See Bittner v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-02204, 2022 WL 1458298, at *18 (N.D. Ohio Jan. 18, 2022) ("The ALJ explicitly found [the plaintiff's] obesity severe, stated that

---

[2] Plaintiff also cites to SSR 02-01p, but Defendant states that it is not applicable to the present case" because "it was rescinded by SSR 19-2p effective May 20, 2019, two years before Plaintiff filed his claim in this case" [Doc. 15 p. 1, n.1 (citation omitted)]. The undersigned will therefore not address this regulation. *See Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-01849, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021) ("SSR 19-2p rescinded and replaced SSR 02-1p[.]"), *report and recommendation adopted*, No. 1:20-CV-1849, 2021 WL 4987607 (N.D. Ohio Oct. 27, 2021).

she had considered it in combination with her other impairments, and evaluated the underlying evidence in a manner that was accurate, if brief, and did not fail to acknowledge any evidence that materially conflicted with her ultimate findings."); *see also Foley v. Comm'r of Soc. Sec. Admin*., No. 5:22-CV-00753, 2023 WL 3162097, at *9 (N.D. Ohio Apr. 12, 2023) ("Accordingly, reading the decision as a whole, the ALJ adequately considered the effect of [the plaintiff's] obesity in crafting the RFC."), *report and recommendation adopted*, No. 5:22-CV-00753, 2023 WL 3159797 (N.D. Ohio Apr. 28, 2023).[3]

Plaintiff contends, "Medical literature and Social Security guidance recognize that obesity can significantly exacerbate musculoskeletal impairments, particularly spinal conditions" [Doc. 13 p. 18]. But as Defendant notes, "Under SSR 19-2p, . . . ALJs are cautioned not to 'make general assumptions about the . . . functional effects of obesity combined with another impairment(s),' but rather to engage in a case-by-case analysis based on the information in the case record" [Doc. 15 p. 7 (citing SSR 19-2p, 2019 WL 2374244, at *4 (alterations in original)]. Plaintiff details his treatment records with Dr. Rodriguez-Cruz, his physical examinations, and his physical therapy notes, and states that he tried a lumbar brace in May 2022 to no avail [Doc. 13 p. 20]. The ALJ, however, detailed all these records in her opinion [Tr. 20–22].[4] The undersigned finds that the ALJ did not err.

---

3 Plaintiff states, "The ALJ's generic statement about considering obesity's impact without any specific analysis of how obesity affects [his] functional capacity fails to meet this standard." [Doc. 13 p. 19 (citing *Campbell v. Barnhart*, 178 F. Supp. 2d 123, 139 (D. Conn. 2001))]. In *Campbell*, however, the court remanded the case so that the ALJ could "gather[] additional evidence[.]" *Id.* at 138. The court also noted that there had been "significant changes in the SSA regulations regarding impairments related to or resulting from obesity" that the ALJ must address. *Id.* This case does not support a remand here.

4 As courts have noted, "In situations where the potential impact of obesity was described far more generally, the Sixth Circuit has recognized that '[t]he absence of further elaboration on the issue of obesity likely stems from the fact that [plaintiff] failed to present evidence of any

## V. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS**[5] that the District Judge **DENY** Plaintiff's request to remand [**Doc. 13**] and **AFFIRM** the Commissioner.

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

functional limitations resulting specifically from her obesity.'" *Foley v. Comm'r of Soc. Sec. Admin.*, No. 5:22-CV-00753, 2023 WL 3162097, at *10 (N.D. Ohio Apr. 12, 2023) (quoting *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004)), *report and recommendation adopted*, No. 5:22-CV-00753, 2023 WL 3159797 (N.D. Ohio Apr. 28, 2023).

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).